**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARY C. RANDALL, Executrix of**
**Charlotte P. Randall Estate,**

                                        **Plaintiff,**

            **v.**                                                    **6:17-CV-323**
                                                                       **(FJS/TWD)**
**AARON H. RANDALL,**

                                        **Defendant.**
_____

**APPEARANCES**                              **OF COUNSEL**

**OFFICE OF RICHARD L. WOLFE**              **RICHARD L. WOLFE, ESQ.**
2803 Genesee Street
Utica, New York 13501
Attorneys for Plaintiff

**SAUNDERS KAHLER, L.L.P.**                 **MERRITT S. LOCKE, ESQ.**
185 Genesee Street, Suite 1400
Utica, New York 13501
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Pending before the Court are Plaintiff's motion for leave to amend her complaint pursuant to

Rule 15(a)(2) of the Federal Rules of Civil Procedure, _see_ Dkt. No. 16, and Defendant's cross-

motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure, _see_ Dkt. No. 24.

## II. BACKGROUND

On March 30, 2017, Plaintiff Mary C. Randall, Executrix of Charlotte P. Randall Estate, commenced this action against Defendant Aaron H. Randall. *See* Dkt. No. 1. In her complaint, Plaintiff alleged three causes of action: (1) equitable relief for an accounting during Defendant's fifty-one days as Power of Attorney; (2) negligence as to the written contract; and (3) a breach-of-contract claim as to the Power of Attorney that Charlotte P. Randall (the "Deceased") and Defendant executed and the Power of Attorney that the Deceased, Defendant and Plaintiff executed. *See id.* at 6-10.

On March 6, 2006, the Deceased executed a Last Will and Testament, in which she named Plaintiff, her daughter, Executrix, and bequeathed her residence and all other real estate, the balance of all of her brokerage accounts, individually owned stocks and bonds, Certificates of Deposit, and checking and savings accounts, and personal property to Plaintiff. *See* Dkt. No. 1-1 at 22-23. The Deceased bequeathed her residuary estate to Plaintiff and Defendant, her son, per stirpes. *See id.* at 23. The Deceased also executed documents naming Plaintiff as her health care proxy and durable general power of attorney on the same date. *See* Dkt. No. 1-1 at 12, 16.

Five years later, the Deceased entered a nursing home to undergo rehabilitation after a fall. *See* Dkt. No. 1 at 2. At the nursing home, the Deceased contracted MRSA; and, on February 5, 2011, she was admitted to Albany Medical Center where her left leg was amputated at the knee. *See id.*; Dkt. No. 1-1 at 37. The Deceased's past medical history included a positive diagnosis for dementia, coronary artery disease, and right carotid bruit, among other diagnoses. *See id.* On February 11, 2011, shortly after the Deceased entered Albany Medical Center, she executed forms naming Defendant her Power of Attorney and Health Care Proxy. *See* Dkt. No. 1-1 at 5, 7.

According to Plaintiff, at that time, the Deceased had two investment accounts: a MorganStanley Smith Barney account valued at approximately $69,258.25 and an Edward Jones account valued at approximately $46,613.11, for a total of $115,871.36. *See id.* at 94. On February 25, 2011, Albany Medical Center discharged the Deceased to Defendant, who took her to a facility in the state of Washington, where he resided. *See id.* at 38-39. Over the next few months, the Deceased's health deteriorated rapidly. She was transferred from facility to facility, but without avail. On April 2, 2011, the Deceased passed away; her cause of death was listed as "Sepsis – Nonhealing Right BKA (below the knee amputation)" on her death certificate. *See id.* at 54. At the time of the Decedent's death on April 2, 2011, there was no money in either her MorganStanley Smith Barney account or her Edward Jones account. *See id.* at 94.

## III. DISCUSSION

### A.    Defendant's cross-motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction

"'Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)). "'A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In deciding such a motion, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) . . ., but 'jurisdiction must be shown affirmatively, and that showing is

-3-

not made by drawing from the pleadings inferences favorable to the party asserting it.' *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)." *Id.* Finally, in resolving a Rule 12(b)(1) motion, a court "may consider evidence outside the pleadings." *Id.* (citing *Makarova*, 201 F.3d at 113).

Defendant argues that the Court lacks subject matter jurisdiction in this case for two reasons. First, Defendant asserts that, because Plaintiff has alleged three common law claims, the Court does not have federal question jurisdiction over this matter. *See* Dkt. No. 24-2 at 5. Second, Defendant contends that the amount in controversy does not exceed $75,000 in value; and, thus, the Court does not have diversity jurisdiction over this matter. *See id.* With regard to the latter argument, Defendant claims that Plaintiff has not alleged an amount in controversy for her first cause of action in which she seeks the equitable remedy of an accounting. *See id.* at 6. Defendant also notes that Plaintiff has not alleged monetary damages for her negligence clam or her breach-of-contract claim. *See id.* at 6-7. Finally, Defendant contends that, because Plaintiff does not allege that her damages exceed $75,000, there is a legal certainty that the amount recoverable does not meet the jurisdictional threshold. *See id.* at 7.

In response to Defendant's arguments, Plaintiff asserts that the Exhibits she attached to her complaint, marked 19F through 20A, itemize the Decedent's accounts, which are valued in excess of $115,000, thereby satisfying the minimum jurisdiction requirement of having an amount in controversy that exceeds $75,000. *See* Dkt. No. 39 at 1. Furthermore, Plaintiff asserts that, when Defendant was the Decedent's Power of Attorney, he exercised dominion and control over these accounts and his failure and refusal to account for a sum exceeding $115,000 creates a controversy. *See id.* at 2. Accordingly, Plaintiff argues that she has satisfied the jurisdictional requirement. *See id.*

-4-

Under 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). When, as in this case, the jurisdictional challenge is to the amount in controversy, the "'party invoking the jurisdiction of the federal court has the burden of proving that it appears to a "reasonable probability" that the claim is in excess of the statutory jurisdictional amount.'" *Scherer v. The Equitable Life Assurance Soc'y of United States*, 347 F.3d 394, 397 (2d Cir. 2003) (quotation omitted). This burden, however, is not onerous because courts recognize "'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Id.* (quotation omitted). "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.* (quotation omitted). The bar for overcoming this presumption is very high; *i.e.*, "'[t]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *Id.* (quotation omitted). Thus, "'[e]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted.'" *Id.* (quotation and other citation omitted). Finally, courts "measure the amount in controversy as of the date of the complaint" and, "[o]nce jurisdiction has attached, it cannot be ousted by subsequent events." *Id.* (citation omitted). Furthermore, "affirmative 'defenses asserted on the merits' may not be used to whittle down the amount in controversy." *Id.* (quotation omitted). "Even where the complaint itself 'discloses the existence of a valid defense,'" the Second Circuit has "declined to consider it in determining whether the jurisdictional threshold is met." *Id.* (citation omitted).

A plaintiff does not need to demand money damages to satisfy the amount in controversy requirement. *See Sills v. Ronald Reagan Presid. Found., Inc.*, No. 09 Civ. 1188(GEL), 2009 WL 1490852, *4 (S.D.N.Y. May 27, 2009). "An action for an accounting alone, even without a concomitant request for monetary relief, can satisfy the amount in controversy requirement." *Id.* (citing *DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271 (2d Cir. 2006)). In such cases, "the amount i[n] controversy is not necessarily the value of the amount to be accounted for. Rather, as with requests for other forms of equitable relief, 'the amount in controversy is measured by the value of the object of the litigation.'" *Id.* (quoting [*DiTolla*, 469 F.3d] at 276 (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977))). "This value is measured from the plaintiff's standpoint and is 'the value of the suit's intended benefit or the value of the right being protected or the injury being averted. . . .'" *Id.* (quotation omitted).

In this case, there is no dispute that the parties are citizens of different states. With regard to the amount in controversy, *i.e.*, the value of the object of the litigation, Plaintiff asserts that Defendant has failed to account for the withdrawals he made from the Decedent's MorganStanley Smith Barney and Edward Jones accounts during the fifty-one days that he served as the Decedent's Power of Attorney. Attached to her complaint, as Exhibits 19G-20A, are the MorganStanley Smith Barney Client Statements for the months of February and March 2011, *see* Exhibits 19-G-19K, and the Edward Jones Client Statement for the period of March 26-April 29, 2011, *see* Exhibit 20A. According to the MorganStanley Smith Barney Client Statement for the period of February 1-February 28, 2011, the beginning total value of this account was $71,637.73 and the ending total value of the account was $48,228.99. *See* Exhibit 19G. This statement also indicates that there was a net cash withdrawal of $25,257.00 during this period. *See id.* According to the MorganStanley

Smith Barney Client Statement for the period March 1-March 31, 2011, the beginning total value of the account was $48,228.99 and the ending total value of the account was $0. *See* Exhibit 19K. This statement also indicates that there was a net security withdrawal of $43,396.62, which appears to account for a transfer of securities to an Edward Jones Account on March 18, 2011, and a net cash withdrawal of $3,224.38. *See* Exhibit 19K. Finally, the Edward Jones statement for the period March 26-April 29, 2011, indicates that assets in the amount of $46,778.99 were withdrawn from the account. *See* Exhibit 20A.

Although it is not entirely clear, construing Plaintiff's *pro se* complaint and attached exhibits liberally, it appears that she is asserting that Defendant, while acting as the Decedent's Power of Attorney, wrongfully withdrew the funds from these two accounts and that he must account for those withdrawals, *i.e.,* provide an explanation for why he withdrew the funds and how he spent those funds. In his affidavit in opposition to Defendant's motion, Plaintiff's counsel asserts that Exhibits 19G through 20A "itemize [the] Decedent's accounts and show a value in excess of $115,000," which satisfies the minimum jurisdictional requirement of $75,000. *See* Dkt. No. 39 at ¶ 4; *see also* Dkt. No. 1-1 at 94 (indicating that value of two accounts on February 11, 2011 was $115,871.36 and that value of those accounts on April 2, 2011 was $0).

On the other hand, in his memorandum of law in support of his cross-motion, Defendant asserts that "Plaintiff has not alleged which of these accounts Defendant allegedly had control over during the time he was Power of Attorney for the [D]ecedent prior to her death on April 2, 2011, or if he made any withdrawals from the accounts." *See* Dkt. No. 24-2 at 6. He further states that, "[i]n any event, the amount set forth in the accounts does no appear to be over Seventy-Five Thousand Dollars ($75,000.00), although quite frankly it is impossible to decipher what Plaintiff is alleging.

It does not appear Plaintiff has alleged the monies in the accounts were not used for the decedent's care." *See id.* Assuming that by these statements, Defendant is attempting to raise some defenses to Plaintiff's claim that he "misused," "misappropriated" or even "exercised control over" the funds in the Decedent's accounts while he served as her Power of Attorney, the Court cannot take such defenses into consideration when determining whether Plaintiff has sufficiently alleged that the amount in controversy exceeds $75,000. *See Scherer*, 347 F.3d at 397. Thus, Defendant has not overcome the face-of-the-complaint presumption that the complaint is a good faith representation of the actual amount in controversy. *See id.*

Accordingly, for all of the aforementioned reasons, the Court denies Defendant's cross-motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction.


**B.      Plaintiff's motion for leave to amend her complaint**

Plaintiff moves for leave to amend her complaint to remove her second cause of action for negligence arising out of a contract. *See* Dkt. No. 16 at 1.

In response, Defendant argues that the Court should deny Plaintiff's motion for leave to amend her complaint because the amendment would be futile since removing her negligence claim would not cure the fact that the Court lacks subject matter jurisdiction over this action. *See* Dkt. No. 23 at 1-3.

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits amended pleadings "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts have interpreted the phrase "when justice so requires" to include the presence or absence of factors such as, whether the underlying facts may be

a proper subject of relief; undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party by virtue of allowance of the amendment; and the futility of the amendment. *See Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011) (quoting [*Foman v. Davis*, 371 U.S. 178,] 182, 83 S. Ct. 227 [(1962)]).

"Amendment is futile if the proposed amended complaint could not survive a motion to dismiss." *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (citing *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)). However, although "'futility' is a valid reason for denying a motion to amend, . . ., this is true only where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of h[er] amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

In this case, Plaintiff merely requests leave to amend her complaint to remove her second cause of action for negligence arising out of a written contract. Such an amendment would not be futile. As addressed above, Plaintiff has pled sufficient facts to establish that this Court has subject matter jurisdiction over this matter and removal of her second cause of action has no effect on the jurisdiction of this Court. Therefore, the Court grants Plaintiff's motion for leave to amend her complaint.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for leave to amend her complaint, *see* Dkt. No. 16, is **GRANTED.** Plaintiff shall file her amended complaint within **fourteen (14) days of the date of this Order**; and the Court further

**ORDERS** that Defendant's cross-motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, *see* Dkt. No. 24, is **DENIED**; and the Court further

**ORDERS** that this case is referred to Magistrate Judge Dancks for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: June 12, 2018
     Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge

-10-